CONTINENTAL, The (CULBERG v.). See Case No. 3,460.

CONTINENTAL, The (GILL v.). See Case No. 5,425.

CONTINENTAL INS. CO. (SEVERANCE v.). See Case No. 12,680.

## Case No. 3,142.

CONTINENTAL WINDMILL CO. v. EMPIRE WINDMILL CO. et al.

[8 Blatchf. 295; 4 Fish. Pat. Cas. 428.][1]

Circuit Court, N. D. New York. March 21, 1871.

PATENT BY EMPLOYE—TRANSFER OF PATENT—NOTICE.

1. B. entered the employment of E., a corporation manufacturing windmills, under an agreement for a salary, and that, in regard to any patentable improvements he might make, he should receive $500 for such improvements. While in such employment, B. made certain improvements in windmills, using the time and tools, &c., of E., and made and sold for E. windmills embodying such improvements. He applied for a patent for such improvements, but, before it was granted, he left the employment of E. After the patent was granted, he assigned it to C., another corporation manufacturing windmills, in which he was a director and the manager of the business. C. then sued E., in equity, for infringing the patent: *Held*, that the suit could not be maintained.

[Cited in Whiting v. Graves, Case No. 17,577; Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 197.]

2. An agreement which operates as a transfer of a patent, is good as against the patentee and those who purchase with notice, though not recorded.

[In equity. This was a bill in equity filed to restrain the defendants from infringing

[1] [Reported by Hon. Samuel Blatchford, District Judge, and Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

letters patent (No. 87,628) for "improvement in windwheel," granted to Addison P. Brown, March 9, 1869, and alleged to have been assigned to complainants. The defendants claimed to be the owners of the patented invention, under a state of facts fully set forth in the opinion.][2]

A. Monell and Keller & Blake, for plaintiffs.

C. W. Smith and N. B. Smith, for defendants.

WOODRUFF, Circuit Judge. It appears, by the proofs on the part of the complainant herein, that Addison D. Brown, the patentee in the patent upon which the bill is filed, entered the employment of the defendant, the Empire Windmill Company, on the 1st of February, 1866, and continued in such employment until October 19th, 1868. The terms of his employment were, that he should "receive one thousand dollars per annum on a trial of three months, and, if satisfactory, twelve hundred dollars thereafter; and, in regard to any patentable improvements which he might make, he was to receive five hundred dollars for such improvements." The said defendant was engaged in the manufacture of windmills, and the said Brown was employed, in the early portion of the time, as machinist, and afterwards as superintendent. During such employment, Brown made what are alleged to be improvements in windmills, using therein the time, tools, &c., of the defendant, and constructed and sold for them mills embodying such improvements, and it was deemed desirable that a patent therefor should be taken. Accordingly, as early as February, 1868, he made application for a patent therefor. Delays occurred in the conduct or prosecution of the proceeding, so that the patent was not in fact granted until March 9th, 1869, which was after Brown had left the employment of the said defendant. After that, he assigned three-fourths of the patent to certain parties, who then united with him in an assignment to the plaintiff, a corporation in which the said Brown is a director and the manager of the business of making and selling windmills.

The present action is brought in this court, as a court of equity, alleging that the said defendant infringes the patent by using the improvements in the manufacture and sale of windmills, claiming to recover the gains and profits of such use, and praying that the defendant be enjoined from such use, &c.

[Various issues of fact were raised by the pleadings, upon which, I presume, it was not expected that I should make any decision or express any opinion. The proofs submitted for my consideration do not enable me to do so. No model showing the alleged improvements is submitted. No lettered drawings are furnished me. Without these the specification and much of the testimony of the witnesses can not be fully understood. In the view I have taken of the case, this imperfection in the proofs was quite immaterial, and no doubt it was so considered by the counsel on both sides.][2]

A question prior to any inquiry into details touching the utility of the alleged invention, its specification and claims, the title of Brown as first inventor, or the extent of the infringement, if any, grows out of the circumstances and the agreement under which the improvements were made or devised. Assuming that the patent is, in all respects, valid, and that the defendant is using the improvements described therein, can this bill be sustained by the plaintiff? I think not.

By the agreement with Brown, any patentable improvements made by him were for the defendant, and he was to be paid therefor five hundred dollars. He made such improvements, introduced them into the defendant's machines, and, no doubt, became thereby entitled to receive the five hundred dollars. Taking the patent in his own name, it might have been necessary that he should tender an assignment, before he could maintain an action at law for the five hundred dollars; but he must, at least, put the defendant in some default, before he could assert exclusive ownership of the improvements. So far from doing this, the proof shows, that, notwithstanding he put the improvements into actual use in the mills made by the defendant, and for its benefit, as it was right and proper for him to do, he, before a patent was procured, in December, 1866, attempted a clandestine, and, as to the defendant, a fraudulent transfer of the improvements and the right to a patent therefor, to one of the officers of the defendant, on the understanding that it should be for the private benefit of such officer, and should be kept secret from the company. This was no less a fraud on the part of Brown and such officer, because, by the aid of a court of chancery, the defendant might have obtained a decree declaring that such officer held as trustee for the defendant's use. That was not the intent or purpose of the parties to the transaction. About a year afterwards, that transaction, it appears, was rescinded, and no such suit was necessary. But, after such rescission, Brown, still in the employment of the company, prosecuted his application for the patent. That, under these circumstances, the defendant acquired, and had, an equitable, if not a legal, right to use the improvements so made for it, and by its employee, is not, I think, doubtful. What would be the effect of a refusal by the defendant to accept an assignment of the patent and pay

therefor the price before mentioned, it is not necessary here to inquire. The proofs do not raise that question. No such refusal is alleged or proved.

It is claimed, that, whatever may be the equitable title of the defendant, the legal title is not in the defendant, and, therefore, this defence cannot prevail; and that the defendant should file a bill setting up such equitable title, and compel a transfer of the patent. This suggestion overlooks the fact, that this suit is brought in a court of equity, where, in matters within its jurisdiction, an equitable title is as good as a legal title, as to all parties affected by such equity. It would be quite absurd to say, in a court of equity, that a party holding an equitable title could be ousted of his equitable rights by the holder of the legal title, who, in such case, stands, in a court of equity, as trustee for the use and benefit of the party beneficially interested.

I do not think the plaintiff stands in any better position than Brown himself, in respect to a claim to restrain the defendant, or recover for its use of the improvements. Brown is himself the plaintiff's director and manager, and, in its dealing with this patent, it has notice, through him, as such. Therefore, the absence of any record of the defendant's agreement with Brown, gives the plaintiff no advantage. It has been repeatedly held, that an agreement which operates as a transfer of a patent is good as against the patentee and those who purchase with notice, though not recorded.

But there is another view of this branch of the case, which, though less favorable to the defendant, is equally fatal to this action, namely, that the transaction between Brown and the defendant operated as a license to it to use these improvements in the manufacture and sale of machines. If I had doubted the views first suggested, I should think this last named proposition quite clear.

The bill should be dismissed, with costs.