## Case No. 2,567.

### CHABOT v. AMERICAN BUTTON–HOLE & OVERSEAMING CO.

[6 Fish. Pat. Cas. 71;[1] 9 Phila. 378; 5 Chi. Leg. News, 75; 29 Leg. Int. 348; 16 Int. Rev. Rec. 164; 7 Am. Law Rev. 382; 4 Leg. Gaz. 345.]

Circuit Court, E. D. Pennsylvania. Oct., 1872.

PATENTS—LICENSE—CONSTRUCTION OF CONTRACT.

1. Complainant, while in the employ of defendant, conducted experiments in defendant's factory, and at its expense, which resulted in the production of the devices on which complainant afterward obtained a patent; but previous to his application he contracted with defendant to make for it, at a fixed price, five thousand machines equal to a specimen, selected as a standard, which contained the devices afterward patented—complainant to use defendant's factory, power, machinery, and materials, and any machinery or tools made or bought by complainant, at his own cost, for the purpose of facilitating the fulfillment of the contract, at the close thereof, to be the property of defendant at a price to be adjusted according to the terms of the contract. The contract having been executed, and complainant having meanwhile obtained his patent, upon a suit brought by complainant to restrain defendant as an infringer: *Held*—That under the rule laid down in McClurg v. Kingsland, 1 How. [42 U. S.] 202, the facts are sufficient to justify the presumption of a license to the defendant to make and use complainant's invention, and that this presumption is strengthened by the terms of the written contract.

[Cited in Wade v. Metcalf, 16 Fed. 132; Keller v. Stolzenbach, 20 Fed. 49; Herman v. Herman, 29 Fed. 94; American Paper-Bag Co. v. Van Nortwick, 3 C. C. A. 274, 52 Fed. 757.]

2. The chief, if not the only value of a portion of the tools, which by stipulation defendant was to purchase at the termination of the contract, consisting in their special adaptation to the production of complainant's patented devices: Quaere, whether this stipulation did not import an understanding on both sides, that the defendant might employ their tools for the uses for which they were peculiarly adapted.

In equity. Final hearing on pleadings and proofs. Suit brought [by Cyprien Chabot] on letters patent [No. 77,715] for an "improvement in sewing-machines" granted to Cyprien Chabot, March 12, 1868.

Hector T. Fenton and Furman Sheppard, for complainant.

Chas. B. Collier and Theodore Cuyler, for defendant.

McKENNAN, Circuit Judge. The decision of this cause turns upon the applicability of a rule at law, settled by the highest authority, to the facts presented in the proofs. The defendant is a corporation, and has been for a number of years engaged in the manufacture and sale of sewing-machines. In 1866, the complainant went into the service of the defendant, as foreman. During that period of his employment, he was engaged in experiments with the tools and materials of his employer, which resulted in the production of the devices for which

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

he obtained a patent on May 12, 1868, in pursuance of an application dated January 27, 1868. After he had invented these devices, and while he was in the service of the defendant, between October, 1866, and August, 1867, he made a number of sewing-machines for it, which embodied his subsequently-patented improvements. For his services during this period, he was fully compensated. On September 30, 1867, he entered into a written contract with the defendant, by which he stipulated to make for it, at a fixed price, not less than five thousand of its machines, known as the combination button-hole and sewing machines, to be in all respects equal to a specimen selected as a standard. This specimen machine had in it the devices for which the complainant afterward obtained a patent. The contract also provided for the free use, by the complainant, of the defendant's factory, machinery, and tools, and for the supply, by the defendant, of power, light, and all the materials necessary to be used in making these machines. It also provided that any machinery or tools bought or made by the complainant, partly or wholly at his own cost, for the purpose of facilitating the fulfillment of the contract, should, at the close thereof, be the property of the defendant, and be paid for at a price to be adjusted according to the terms of the contract. This contract seems to have been fully executed on both sides, and the relations established by it to have been terminated by the mutual consent of the parties.

Now the question is, do these facts amount to a "consent and allowance" by the complainant of the use of his invention by the defendant? In McClurg v. Kingsland, 1 How. [42 U. S.] 202, where the patentee was in the employment of the defendants, at a weekly compensation, and while so employed made experiments at their expense, which resulted in the discovery of an improved method of casting iron rollers, where he continued to use his new method in making rollers for them for four months, at increased wages, before he applied for a patent, proposed to the defendants to purchase his right and take out a patent, which they declined, and made no demand on them for thus using his improvement, nor gave them any notice not to use it, until a misunderstanding occurred between them, it was held that these facts "would fully justify the presumption of a license, a special privilege or grant to the defendants, to use the invention; that the facts amounted to a 'consent and allowance of such use,' and show such consideration as would support an express license or grant, or call for the presumption of one to meet the justice of the case, by exempting them from liability."

Now, it seems to me that the facts in this case call more imperatively for the presumption of a license than in McClurg v. Kingsland [supra]. The complainant's experi-

ments were carried on in the defendant's factory, and at its expense, and while he was in its employment, in an advanced position. After he had brought them to a successful issue, he incorporated his new devices in machines which were constructed under his superintendence in the defendant's factory, and so he continued to do, for more than four months, until he made them their contract before referred to. If the rule stated in McClurg v. Kingsland is to be followed, these facts are sufficient to justify the presumption of a license to the defendant, to make and use complainant's invention. But that presumption is strengthened by the terms of the written contract. It provided for the manufacture of a large number of machines by the use of the defendant's factory, machinery, tools, and materials—the labor expended upon them and the complainant's services alone being supplied by him; and for these his compensation was fixed by the contract. These machines were intended to be, and were actually sold and distributed throughout the country as the defendant's machines. Whatever degree of popular favor might be secured for them as the result of their peculiar features of construction and operation, it is obvious that this was the expected source of profit to the defendant, and the inducing motive on its part to enter into the contract. When they had been introduced into general use by the defendant's efforts, were known distinctly as its machinery, and a growing market for them had been established, it is not a fair inference that the parties intended that the advantage thus gained by the defendant should be lost, when the number of machines contemplated by the written contract should be supplied. On the contrary, it was stipulated that the machinery and tools, bought or made by the complainant, should, at the termination of the contract, become the property of the defendant, upon payment to him of their value ascertained in the method provided for. The chief, if not the only value of a portion of these tools, consisted in their special adaptation to the production of the complainant's patented devices. Without the right to use them, there is no apparent reason why provision should be made for their transfer to the defendant, for a price measured by their real value. Does not this stipulation then, import an understanding on both sides, that the defendant might employ these tools, for the uses for which they were peculiarly adapted? Considering all these circumstances, in their just significance, I think the case is brought within the dominion of the rule stated in McClurg v. Kingsland, and that the complainant must be presumed to have consented to and allowed the use of his inventions by the defendant. The bill must therefore be dismissed, with costs.