## Case No. 17,577.

### WHITING v. GRAVES et al.

[3 Ban. & A. 222;[1] 13 O. G. 455.]

Circuit Court, D. Massachusetts. Feb., 1878.

INVENTION BY EMPLOYEE—RIGHTS OF EMPLOYER —ASSIGNMENT AND LICENSE—EQUITABLE RIGHTS AND REMEDIES.

1. An employment to invent and perfect machinery for a particular purpose, while it will operate as a license to the employer to use machines invented by the employee, and put in use under such employment, will not, of itself, confer upon the employer any legal title to the invention itself or to the letters patent protecting it.

[Cited in Wilkens v. Spafford, Case No. 17,-659; Hapgood v. Hewitt, 119 U. S. 233, 7 Sup. Ct. 197.]

2. Where the inventor assigns his inventions to a party to whom the patent is subsequently issued as the assignee of the inventor, upon a verbal agreement that the assignee shall pay the expense of the patents for one-half interest in it, the manufacture and sale of the patented articles by the defendants, to whom the patentee has assigned his equitable interest in the patents, is not infringement.

[Cited in Marsh v. Newark H. & V. Mach. Co. (N. J. Err. & App.) 29 Atl. 483.]

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

3. The inventor had an equitable title to one-half of the patents.

4. In a court of equity a party holding an equitable title cannot be ousted of his equitable rights by the holder of the legal title, who in such case stands in a court of equity as trustee for the use of the party beneficially interested.

[This was a bill in equity by George A. S. Whiting against John A. S. Graves and others for the alleged infringement of letters patent No. 176,636, granted to E. L. Howard April 25, 1876.]

Thomas William Clarke, for complainant.
George D. Moyes, for defendants.

SHEPLEY, Circuit Judge. The complainant, being about to start a factory for the manufacture of fancy dry goods, employed Elijah L. Howard as a machinist, at a salary of twenty-one dollars a week. The complainant states the employment as follows: "I also engaged a machinist, whose duties were the making and keeping in order of ruffling, ruching, and fluting machines, and all attachments or machinery required for the manufacturing of any goods which might be necessary to be made." Complainant, however, on being interrogated as to what information he communicated to Howard, as to the duties and services expected of him, replies: "I told him that I should require him to make what machinery was necessary, and keep it in repair." Howard testifies that complainant, being about to start a rival factory for the manufacture of rufflings, in which sewing-machines were to be used, wanted a man to take charge of his machinery; that Howard was introduced to him by one Leavitt as a competent man for that service; that Whiting agreed to employ him. He testifies: "He was to pay me twenty-one dollars a week; that was all the agreement made."

It is apparent from the complainant's statements, as well as from the testimony of Howard, that there was nothing in the original contract for service which would give Whiting any legal or equitable title to any letters patent for any inventions Howard might make. During the term of his employment, patents for a number of inventions made by Howard were issued to Whiting. his employer, to whom the right in the inventions had been assigned by Howard, at or before the times of making the applications. Many of these were for such little additions to sewing and other machines as were necessary to adapt them to the making of flutings, ruffles and ruchings. As these were adaptations of machinery to the special business of Whiting, and the expenses of the applications and the patent fees were paid by him, it seems to have been considered by both parties that Whiting had the sole interest in the patents. Two patents. however, were issued in the name of Whiting for the inventions of Howard, for contrivances applicable to sewing-machines generally, being for improved mechanisms for operating such machines. It is claimed on the part of the complainant that he is the sole owner of these letters patent, and that Howard has no legal or equitable interest therein. The defendants claim that Howard, the inventor, is entitled to an equitable interest in one-half of the rights under these two patents.

Whiting contends, and in substance testifies, that Howard went to Whiting with an understanding that he should make improvements in the machinery of Whiting's factory to the best of his ability, and Whiting should have the fullest benefit of them; and the patents upon these inventions were procured merely for business protection by Whiting, and the manufacture of the machines was an afterthought. Even if this were so, there would seem to be no good reason why Howard should not receive some benefit from the use of his inventions in other factories than Whiting's, and from the sale of his inventions to others. It was no part of the original employment of Howard, according to Whiting's statement of his understanding of it, to invent machinery for general use, but only in the factory of Whiting. This was a factory not for making and selling machinery, but for manufacturing fancy dry goods with the aid of machinery. The employment to invent and perfect machinery for that purpose, while it would operate as a license to Whiting to use machines invented by Howard, and put in use under such employment, would not, of itself, confer upon Whiting any legal title to the invention itself, or to letters patent protecting it. Whiting states in his testimony that he had no thought of patenting any inventions at the time of the employment of Howard, and that the patent business never occurred to his mind at that interview. Yet, it is contended that when the applications were made for the patents on the treadles, Howard assigned the inventions to Whiting without any consideration other than what would arise from the nature of the employment, and that the legal and equitable title to the letters patent is so absolute in Whiting that he is entitled to treat Howard and the defendants who are using the treadles under Howard, as infringers. Whiting states that subsequently to the time when the patents for the two treadles were issued, he agreed to give Howard one-half of the profits from the manufacture and sale of the Howard treadles as long as Howard remained in his employment. It appears that a separate account was opened on Whiting's books under the head of the "Howard Treadle Account."

Howard, on the contrary, testifies that Whiting said he would pay the expense of the patent on the first treadle for one-half interest in it; that he subsequently told him he had the papers made in his own name. assigned to himself. and that at any time Howard wanted a transfer of his interest in those papers, he would do so; and that when he proposed to have the second treadle invention patented, he said he would make the same terms as on

the first patent; that he (Howard) assented to that, and the papers were made accordingly.

Three witnesses, Graves, Weston and Kenerson, all testify to conversations at different times' with Whiting, in which he stated to them, respectively, that he was to pay the expenses of obtaining the patents for one-half interest in them, and was to assign one-half to Howard whenever he wanted it. This seems to fully confirm Howard's statement of the transaction, and Whiting's version of the arrangement is uncorroborated by any witness, and is not consistent with the attendant facts and circumstances proved in the case. After Howard left the employment of Whiting, he assigned his equitable interest in these two patents to the defendant Graves. Under this assignment the defendants, Graves and Abercrombie, his partner, have made and used the patented treadles. As it is clear upon the evidence in this record that Howard had an equitable title to one-half these two patents, the defendants cannot be held to infringe. In a court of equity a party holding an equitable title cannot be ousted of his equitable rights by the holder of the legal title, who in such a case stands in a court of equity as trustee for the use of the party beneficially interested. Continental Windmill Co. v. Empire Windmill Co. [Case No. 3,142]; Clum v. Brewer [Id. 2,909]; Woodworth v. Cook [Id. 18,011]; Price v. Dyer, 17 Ves. 357; 1 Story, Eq. Jur. § 161.

The defendants' plea is sustained, and the bill dismissed with costs, and decree will be entered accordingly.