## Case No. 17,659.

WILKENS v. SPAFFORD.

[3 Ban. & A. 274; [1] 13 O. G. 675.]

Circuit Court, D. Massachusetts. April. 1878.

PATENTS—INVENTIONS BY EMPLOYE—EMPLOYER'S RIGHT—LICENSES.

1. S. made a contract with W. that. for a stipulated salary paid to S., he, W.. was to have the exclusive benefit of the services of S. in making machinery and improvements in W.'s premises. and he was also to have the exclusive benefit of the inventive faculties of S.. and of such inventions as he should make during the term of service. The term was one year. but at the expiration of that time. S. continued in the service of W. for some time longer without making any new agreement. During these times S. invented and constructed several machines, which were patented. *Held.* that W. was entitled to an exclusive use of these ma-

[1] [Reported by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

chines during the existence of the patents and any extensions, renewals or reissues thereof.

[Cited in Hapgood v. Hewitt, 119 U. S. 234, 7 Sup. Ct. 197.]

[Cited. in Fuller & Johnson Manuf'g Co. v. Bartlett, 68 Wis. 80, 81, 87, 31 N. W. 750. 753.]

2. Before S. entered the service of W. he had invented and patented a machine which was not then practically useful, but which during the period of said service S. perfected at W.'s expense. *Held*, that W. was entitled to a license for the use of such machine.

[Cited in Jencks v. Langdon Mills, 27 Fed. 624.]

This was a suit in equity [by William Wilkens against Nathan H. Spafford], brought to enforce the equitable rights of the complainant, under certain contracts, in machines and inventions for the treatment of bristles, made by a workman of complainant.

J. H. B. Latrobe and Causten Browne, for complainant.

Chauncey Smith and George E. Betton, for defendant.

SHEPLEY, Circuit Judge. It is clear from the evidence in this record that no contract was made until the conference took place between the parties in New York. Although no written contract was there made between the parties, it is not difficult, from the attending circumstances and the previous correspondence between the parties, and their subsequent conduct and dealings with each other, to determine with substantial accuracy what that contract was. Spafford had written, May 5, 1864, to Wilkens, proposing to go to Baltimore, "and go to work for you for a year, if you desire it, making improvements in your machinery." Wilkens' answer, May 19th, 1864, contains the following passage: "Supposing you write me on what terms, or how much compensation you would ask me to go to work and make inventions and improvements on my place in machinery, such as is used in my business, for my only benefit, and not to be used by any one without my permission, say for one year," etc. On the 24th of May, Spafford replies—among other things: "And to this end, am ready to engage my services to you for one year, as you have named in your letter, and to give you the exclusive benefit of the same in machinery and improvements about your premises. * * * You wished me to name my price. I think, your having the exclusive benefit of my invention, that it would not be unreasonable to name twenty-five hundred dollars for a year. This sum may seem large to you, but, in case I could improve your machinery so as to save double that amount annually in your business, then it would seem small. * * *" May 30th, Wilkens replies to this letter, inviting Spafford to meet him in New York at his (Wilkens') expense, to "talk everything over," and saying: "I don't want anything except what is fair and right, and think we may agree, as I see nothing unreasonable in your proposi-

tion." The parties met in New York, and it appears clearly that the interview ended in an acceptance of Spafford's written propositions. The result follows that the contract was that Wilkens agreed to pay Spafford twenty-five hundred dollars a year; that Wilkens was to have the exclusive benefit of Spafford's services in making machinery and improvements in Wilkens' premises; that he was to have the exclusive benefit of his inventive faculties, and of such inventions as he should make during the term of service. And it also appears clearly that the engagement of Spafford was made with reference to the fact that Spafford had been engaged in inventing and experimenting upon machinery for working bristles—Wilkens being very extensively engaged in the business of manipulating bristles and manufacturing brushes from bristles. It clearly was in the contemplation of both parties that Wilkens should have the use of such machines as Spafford during the term should construct, with the skill acquired in his previous experiments, and also the exclusive use of such inventions as Spafford should make after the commencement and during the term of his employment, so as to give Wilkens "the exclusive benefit of the same" (Spafford's services), "in machinery and improvements," and "the exclusive benefit of my" (Spafford's) "invention"—that is, his inventive faculties during the year. Immediately upon the acceptance by Wilkens of Spafford's propositions, Spafford proceeds to purchase, on Wilkens' account and at his expense, the necessary tools and fittings for a shop for the experimenting upon and making machinery for manipulating bristles and spinning hair. Among other things, Spafford prepared drawings for a combing-machine. He charged Wilkens for the cost of the drawing-paper on which these drawings were made, and for his time and expenses during the eighteen days in which he was engaged in making the drawings and in the purchase of tools, and in visiting "places they spin hemp and manilla" to fit him to "make a machine for spinning the hair that will be an improvement on your" (Wilkens') "present ones." That Spafford perfectly understood that he was employed to experiment on making inventions for Wilkens' benefit is fully proved by his own letter of June 21st to Wilkens, at the close of which he writes: "I have some patterns and small pieces of machinery, such as gears, springs, &c., which will be useful in experimenting, and are not of much value to me, which I will bring on or send on by express, if you think best."

On the 1st of July Spafford reached Baltimore, and his salary and services commenced under the contract for a year's time. At the expiration of the year Wilkens was in Europe, and Spafford continued his services under the original contract, and at the same salary, until December 8th, 1865, when Spafford wrote from Baltimore to Mr. Wilkens, in Germany, suggesting "that after one year

from the time I" (Spafford) "came here we had no agreement, the old one having expired, and that it would be well for us to come to an understanding in regard to my patents and inventions." In this letter he "described the three new machines—dragger, comber, and separator—and gave their results," and told him he thought he could make three new labor-saving machines—rifling-machine, mixing-machine, and tampico and horse-hair machines—also spinning-machine for curled hair. Wilkens replied to this letter that he expected to start soon for home, and that, therefore, it would be useless for him to say anything in his letter in relation to Spafford's proposition, suggesting to him to go on slowly with as little expense as possible, until he (Wilkens) arrived, when they could talk everything over what to do next, adding: "I don't want you to stop until I come." Spafford remained without any modification of the contract at the same salary until after Wilkens' return, and the parties not agreeing upon a new contract, he left Wilkens' employment in May, 1867. During this time he invented and constructed the combing-machine, patented April 17th, 1866 [No. 54,033], the separator, patented February 20th, 1866 [No. 52,763], the bundler, patented April 17th, 1866 [No. 54,034], the leveller, or small dragger, patented October 30th. 1866 [No. 59,286], and the rifler, the model of which appears to have been completed September 15th, 1866 [patented Jan. 22, 1867, No. 61,480]. These inventions were made and patented while Spafford was "experimenting" under a salary paid him to experiment upon, invent and construct such machines, and under his own agreement to give Wilkens "the exclusive benefit of the same" (services) "in machinery and improvements," and "the exclusive benefit of my" (Spafford's) "invention." They were made in shops and with machinery and tools furnished by Wilkens and at his expense, for the purpose of such experiments, inventions and constructions, at a cost variously estimated at from twenty-one to thirty thousand dollars, and estimated by Spafford at over twenty thousand dollars.

It appears very clearly that Wilkens is entitled to an exclusive license for the use of these machines during the existence of the patents, and any extensions, renewals or reissues of the same. McClurg v. Kingsland, 1 How. [42 U. S.] 202; Whiting v. Graves [Case No. 17,577].

Before Spafford entered into the service of Wilkens he had invented and patented a dragging-machine for dragging bristles. This machine he afterwards perfected during his service with Wilkens. The original machine exhibited to Wilkens at Providence, regarding it in the light in which Spafford and Wilkens regarded it. and looking at its subsequent history, was evidently not a practically useful machine. On the other hand. its deficiencies apparently were rather structural than functional. It needed more mechanical perfection

as a whole and in some of its operative parts, and such a substitution of better equivalents for some of the devices as a skilled mechanic could easily make, to render it practically useful. It needed the work of the skilled artisan more than the thought of the inventor. It needed only the crucial test of experience, of a trial test, to see how to make the mechanical devices perform their intended functions in the machine, rather than experiment as a step in invention. One or more of these machines were constructed by Spafford during his employment by Wilkens, for him and at his expense. That he should construct such machines for Wilkens was contemplated by both parties at the time of his employment. Wilkens is entitled to a license for the use of such machines so constructed, or whose construction was commenced by Spafford during the term of service.

A decree for the complainant, in accordance with these views. may be drawn up and submitted to the court.