### JENCKS v. LANGDON MILLS and others.

*(Circuit Court, D. New Hampshire. May 22, 1886.)*

PATENTS FOR INVENTIONS—INFRINGEMENT—SPECIAL LICENSE—INVENTOR IN LICENSEES' EMPLOYMENT.

The plaintiff was in the employment of the defendants; and, in experimenting upon his inventions, of which he had several, he took the time which belonged to the defendants, used their tools, workmen, and materials, and tested the inventions in the machinery which was run by them. He was given to understand in regard to inventions he brought out prior to the one in question that the defendants claimed the right to use his inventions because he was in their employ. About the time of patenting the invention in question he received a sum of $250 a year in addition to his salary from the defendants, and he now claimed that this sum was given as a royalty for the use of his patent for spindle bolsters; but it appeared from the evidence that he had made, about this time, a complaint of being unfairly treated, and his receipts showed that the $250 had been received by him as an increase of salary. There was also evidence that he was anxious for the defendants to adopt his first invention, as it would be an advantage to him in introducing it elsewhere, and agreed to allow them to use it free, and that this agreement was extended to his other subsequent inventions, including the one in question. *Held*, in an action for infringement, that the defendants had shown a special license for the use of the patented spindle bolster and other improvements, put into their mills while in their employ.

In Equity.

*Wood & Clark*, for complainant.

*Livermore & Fisk*, for defendants.

COLT, J. This bill in equity is brought for infringement of letters patent No. 168,644, granted the complainant for improvement in spindle bolsters. The suit is between citizens of New Hampshire, and the first question to be determined is whether there is a subsisting license between the plaintiff and the defendant corporation covering the patented bolsters in controversy.

The plaintiff was in the employ of the defendant corporation as overseer or superintendent from 1861 to 1877. During this time he made several improvements in the machinery used in the mills. His patented adjustable rings were put into the mills in 1866 and 1870, and his patented traveler cleaner in 1868 and 1870. The patented bolster upon which suit is now brought was put in between 1875 and 1877. The date of the patent is October 11, 1875. The defendants

contend that Jencks agreed to give the company the free use of his inventions as an advantage to him in introducing them elsewhere; that he was to make no charge for royalty, and that no royalty was ever paid; that he took the time which belonged to the company to devise and experiment with his improvements; used the tools, workmen, and materials of the company in making the improvements; and tested them in the machinery which was run by the company. As to the two earlier inventions, the plaintiff testifies, in substance, that he was given to understand by Mr. Killey, the agent of the defendant company, that they had a right to the free use of his inventions because he was in their employ; and that he allowed the corporation to use them because he believed this. He further testifies that in August, 1874, he learned that the company had no right to use his inventions because he was in their employ; and that he then told Mr. Killey he had applied for a patent on the bolsters, and should expect the company to pay for them, if the patent was allowed. After the allowance of the patent he says he had an interview with Mr. Killey, in which he stated that the company had deceived him about the first two patents, and demanding pay for the use of his inventions, which resulted in the company giving him $250 a year for the use of his inventions from the spring of 1876 until about the time he left the employment of the company, in December, 1877. He does not remember that any reference was made as to how long the $250 a year was to continue, but he thought it was to continue so long as the company used his improvements.

Mr. Killey admits that he told Jencks that the company claimed the right to the free use of his inventions because he was in their employ. He further says that Jencks was very anxious that the company should adopt his adjustable ring, as it would be an advantage to him in introducing his improvements. For this reason, he agreed that the company should pay nothing for the improvement, and that this agreement extended to all improvements, and therefore covered the bolster patent now in controversy. As to the $250 a year paid to the plaintiff for about a year and a half, Mr. Killey and Mr. Amory, the treasurer of the company, both testify that it was paid as additional salary upon the complaint of Mr. Jencks that the company was not treating him fairly. This position is confirmed by the form of receipt taken from the plaintiff, wherein it appears that the money was paid as additional salary. Again, in a letter from the treasurer to Killey in October, 1877, he notifies him that the business of the company will not warrant the payment to Jencks after that month of his extra salary.

The great weight of evidence is in favor of the position taken by the defendants that the $250 was not paid as a royalty for the use of the inventions, but was given to the plaintiff as additional salary because of his services to the company. That Jencks was willing and desirous that the company should have the free use of his in-

ventions as an advertisement is supported by the testimony of other witnesses, who had conversations with him. It is also in evidence that the tools and materials used in making the improvements were furnished by the defendant company. Upon the proof before us, we think the defendants have shown a special license to the free use of the patented bolsters and other improvements put into their mills by the plaintiff while in their employ. The courts have held, in cases where the facts were less favorable, as it seems to us, to the defendants, than in the present case, that a license from the patentee was to be presumed. *McClurg* v. *Kingsland*, 1 How. 202; *Barry* v. *Crane*, 22 Fed. Rep. 396; *Wilkens* v. *Spafford*, 3 Ban. & A. 274; *Magoun* v. *New England Glass Co.*, Id. 114.

We do not think the evidence supports the position taken by the plaintiff that if there was any license to use the patented bolsters it was on condition of the payment of $250 a year so long as the defendant corporation used them, or during the life of the patent. We are relieved, therefore, from deciding the question whether, if such was the fact, the defendant corporation might not now be sued as an infringer on the ground that it had repudiated the license by its failure to pay the royalty for a number of years. It also becomes unnecessary to decide whether such a parol contract as the plaintiff has sought to make out would not be void under the New Hampshire statute of frauds. It is clear that the statute has no application to the license which we find upon the evidence exists between the parties.

This suit being between citizens of the same state, and there appearing to be a subsisting license between the parties, the court has no jurisdiction, and the bill must be dismissed. *Hartell* v. *Tilghman*, 99 U. S. 547.

Bill dismissed.