PRESSED STEEL CAR CO. v. HANSEN.

(Circuit Court of Appeals, Third Circuit. April 27, 1905.)

No. 28.

1. SPECIFIC PERFORMANCE—PAROL CONTRACT—SUFFICIENCY OF PROOF.

To warrant a decree for the specific performance of a contract, such contract must be clearly and unequivocally proved, and its terms, as to subject-matter, consideration, and all other essentials, must be specific and unambiguous.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 56, 61, 113, 387-395.]

2. PATENTS—CONTRACT TO ASSIGN—SUFFICIENCY OF PROOF.

Findings that an express contract by defendant to assign to complainant, his employer, the patent rights in inventions made by him during his employment, was not proved, and that the facts shown were not such as to warrant the presumption that such a contract existed, held sustained by the evidence.

3. MASTER AND SERVANT—INVENTION BY EMPLOYÉ—RIGHT OF EMPLOYER TO PATENT.

In the absence of an express contract or agreement therefor, the relaton of employer and employé, under whatever circumstances, at least short of a specific employment to make an invention, does not vest the employer with the entire property right in an invention of the employé, and to the patent monopoly thereof, or with anything more than the shop right or an irrevocable license to use the invention.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 71; vol. 38, Cent. Dig. Patents, § 125.]

Acheson, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 128 Fed. 444.

William C. Strawbridge and John R. Bennett, for appellant.

George B. Gordon and D. T. Watson, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. Suit was brought by the appellant, the complainant below, the Pressed Steel Car Company, against Hansen, the appellee, to compel the assignment of six applications for patents made by him when in appellant's employ as chief engineer. The complainant was engaged in the manufacture of steel cars. As summarized by the court below, the allegations upon which the complainant based its right to the relief sought are, in substance, set forth in its bill as follows: That Hansen was for several years previous to the complainant's incorporation employed by the

Schoen Manufacturing Company, its successor, the Schoen Pressed Steel Company, and finally became chief engineer of the last-named company; that complainant succeeded to the business and good will of the Schoen Pressed Steel Company, whereupon Hansen "entered your orator's employ as its chief engineer, under an agreement and understanding to devote his entire time, ability and skill to your orator's business and its advancement, and that all inventions and improvements that he might make during the period of his employment, and all letters patent that might be obtained therefor, should be the sole property of your orator"; that "it was a condition of his employment, as chief engineer, and in part consideration of the salary paid him as such, and his employment as such implied, and was upon the express understanding and agreement by him, that all designs, inventions and improvements that he might make or develop, while in your orator's employ, and all letters patent that might be obtained therefor, should become and be, the sole and exclusive property of your orator, and that for all such designs, inventions and improvements, if found or regarded as patentable, he would, from time to time, as he made or developed such designs, inventions or improvements, disclose the same to your orator's solicitor, and, through him, and at your orator's expense, make all necessary and proper applications for letters patent, and execute all necessary and proper papers to that end, and that he would, from time to time, as such applications were executed and filed, likewise execute and deliver to your orator, with such applications, properly executed assignments, of all such applications, inventions therein specified and letters patent that might be granted thereon and therefor, with directions to the Commissioner of Patents to issue all such letters patent to himself as assignor to your orator, of all his right, title and interest in and to all such letters patent, which should be the entire right, title and interest therein; that such being the terms and conditions of the respondent's employment by your orator, and in full appreciation and consideration therefor, and of the inventions and improvements that he might make and letters patent that he might obtain therefor, he was paid by your orator a salary at the rate of $4,000 per year to January 1, 1900; at the rate of $5,000 per year to September 1, 1900; at the rate of $6,000 per year to October 1, 1901; and at the rate of $10,-000 per year down to January 1, 1902, when he left your orator's employ"; that thereafter and while performing his duty as chief engineer, he made the inventions in question and made applications for patenting the same; that he subsequently left the employ of complainant and refused to assign the same.

The prayers of the bill are (1) that the respondent may be ordered and compelled to specifically convey and assign to the complainant, by proper assignments and instruments in writing, each and every of the specified pending applications for letters patent and the letters patent to be granted thereon, and (2) that respondent may be restrained and enjoined, pendente lite and perpetually, from conveying or assigning to any party or parties whomsoever, other than the complainant, the said inventions or improvements

embodied in said six pending applications for letters patent, or the letters patent that may be granted or issued therefor or thereon, either in whole or in part, or any right, title or interest therein, thereto, or thereunder. The answer of the respondent and appellee generally and specifically denies that there was any contract, express or implied, to assign these patents, or that there was any equity in the complainant, by reason of the relations between the parties or of the facts in the case to demand such as assignment. Testimony was taken at great length by both parties, and in due course went to final hearing upon bill, answer, proofs and exhibits. The case, as stated by the court below, involved three inquiries: First, whether any express contract by Hansen to transfer the patents to the complainant was proved to have been made; second, whether the facts proven were such as to warrant a presumption that a contract existed; and third, whether a contract to transfer is to be implied in law from the relation between the parties.

There is no assertion of the existence of a written contract, but the complainant did assert and attempt to prove an oral contract by the respondent to assign the applications for the patents in question, or the patents themselves, to the complainant. As to the existence of such a contract, there was much conflicting testimony. On the one hand, the president of the complainant company testified to conversations with Hansen, which, if true, tended to show that there was a mutual understanding that these patents belonged to the complainant, and that upon proper demands therefor, they would be assigned. No specific agreement in definite terms, setting forth consideration and specific promise on the part of Hansen, was proved. The principal reliance on the part of complainant to establish such a contract as its president testified to, were facts and circumstances relating to the employment of Hansen as chief engineer, and his own admissions that he had charge of all the departments, so far as operations of the works (the mechanical end of the business) was concerned, and that it was within his duties "to improve or assist in improving the manufactured products of the company," as was also "the matter of devising, designing cars, or parts thereof." Hansen himself, in his testimony, absolutely denied that any such conversations as were testified to by the president of the company ever took place, and positively asserted that no contract of any kind existed between complainant and himself, by which he was to assign to complainant the patents in question. In this respect, he was fully supported by the testimony of W. T. Schoen, president of the appellant company down to 1901, as well as organizer and president of the predecessors to complainant company. The fact is much relied upon by the complainant, that in numerous other cases applications for patents made by appellant had been transferred to the company, as a matter of course, and, in fact, all patents up to the six here in question had been so transferred. Hansen explained this, by saying that he was very young when first employed; that he was grateful to both the present company and its predecessor, which first employed him, and that out of good feeling, and as a matter of routine, he continued to assign applica-

tions made by himself for patents to his employer; that as to the six applications here demanded by complainant, they were made just before the termination of his employment by complainant, the inventions were worked out at his own home, and not at complainant's shops, and he then for the first time had occasion to assert his ownership. There was much other testimony bearing upon the issue, which it is needless to recapitulate.

The bill being for the specific performance of a contract, such contract must be clearly and unequivocally proved, as stated. As proved, its terms as to subject-matter, consideration and all other essentials, must be explicit and unambiguous. The court below, after an extensive review of the testimony, has reached the conclusion (1) that no express contract by Hansen, to transfer patents, has been proved, and (2) that the facts proven are not such as to warrant the presumption that such a contract existed. These findings of fact by the court below must receive the respect and consideration to which such findings are always entitled in a reviewing court. They are prima facie conclusive, and nothing but a showing that the preponderance of evidence is clearly and unmistakably against them, would justify this court in reversing them. After a careful reading of all the testimony in the record bearing upon this question, we do not discover ground for such reversal.

The important question remains, whether, from the relation of the parties, there resulted to the complainant, as a conclusion of law, such an equitable title to the entire patent monopoly, as would make enforceable a conveyance of the legal title. It should be borne in mind, that what the bill claims, is the whole and exclusive title to these inventions, and the patents therefor, and the only relief prayed would, if granted, convey the entire property right and monopoly of these inventions to the complainant, stripping the defendant of all right therein. It is not sought by complainant to establish a shop right, or irrevocable license, for the manufacture and sale of the inventions covered by the patents, or any less interest than the whole and exclusive property right therein, and it is as to the existence of a specific contract to convey such entire interest, that the court below found there was a failure of proof, direct or circumstantial. Notwithstanding, complainant contends that, in the absence of express understanding or agreement, the relation of employer and employé, as established by the facts of this case, did, as a legal consequence, carry absolute ownership and title in the monopoly of these patents to the complainant company, to the exclusion of all right of the defendant therein.

The concrete proposition of complainant's counsel on this point had best be stated in their own language:

"Our contention, under this proposition, based upon our eleventh and twelfth assignments of error, is that, as conclusion of law, the title to the applications for letters patent for inventions made by Hansen while in the complainant's employ as its chief engineer, at a salary of $10,000 per year, having charge of its engineering, mechanical and manufacturing departments, and with the admitted duties of improving or assisting to improve its manufactured products and of devising and designing cars or parts thereof for its benefit, such inventions being within the line of manufacture for which the complainant

company was organized and which it thereafter carried on, passed to the complainant, and that, under the circumstances, the obligation to assign arose from the relation of employé and employer. This proposition is predicated upon an admitted state of facts. Hansen testifies that as chief engineer of the complainant company he had charge of the engineering, mechanical and manufacturing departments of its business, and that the matter of devising and designing cars or parts thereof came within the work of the engineering department; that his duties as chief engineer included the devising and designing of cars and parts thereof, and the improving of and assisting to improve the manufactured products of the complainant company and for its benefit; that during the period of the making of the inventions in controversy, he was in receipt of a salary of $10,000 per year; that he voluntarily resigned the office of chief engineer and retired from the complainant's employ after he had made the inventions in controversy and placed them in the hands of the complainant's patent solicitor for the making of applications for letters patent, and after such applications had been prepared and returned to him for consideration and execution, preparatory to filing; and that throughout the entire period of his employment he did assign to the complainant company all applications for letters patent with the exception of the six in controversy. And to like effect is the testimony of the defendant's witness, Charles T. Schoen."

We do not think there is any justification for this contention in the facts disclosed by the record, or for the same contention in another form, viz., that defendant is estopped, by reason of the relation of the parties and his own conduct, to deny such alleged equitable title in complainant. Both must rest upon the same basis of fact and law. Whether the complainant would have been justified in claiming what is called a shop right or a right to a license, irrevocable or otherwise, in regard to Hansen's inventions, is not the question raised by its bill. The claim is for the whole and exclusive title, and the demand is for a legal assignment of the same. A claim and demand so drastic as this, has no basis in the facts disclosed in this record.

Complainant's counsel specially relies, for the support of his contention, upon certain dicta in the opinion of the Supreme Court, in the case of Gill v. United States, 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480. Before considering these, however, it will be necessary to advert to some prior decisions in the Supreme Court, which throw an important light upon the proposition now under discussion.

Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369, was a case in which a bill in equity was filed by the employer against an employé, to compel the latter to convey to the plaintiffs the title to letters patent obtained by him for an invention made while he was in their employ. The complainants, the Hapgood Plow Company, and its trustees, Hapgood et al., claimed title to the patents in question, by assignment from Hapgood & Co., a dissolved Missouri corporation. We briefly summarize the allegations of the bill. The defendant's employment by complainant was that of general superintendent of a manufacturing department, whose duties, among other things, were to devise and get up such new devices, arrangements and improvements in the plows manufactured, as should adapt them to the market, and as should be needed from time to time to suit the wants of customers. The defendant had been employed, upon his representation to the complainant that he was a man of large experience in mechanical pursuits, and was familiar

with · the manufacturing of plows and agricultural implements; that he had devised many valuable improvements in the plows manufactured for concerns by whom he had been employed; and that he could and would give to any manufacturer who should secure his services, the benefit of his experience, in devising and making improvements in the plows manufactured. The bill further stated that, in consequence of these representations, and relying upon them, the complainant employed the defendant to devote his time and services to getting up, improving and perfecting plows and other goods. Some time after his employment, his interest in the corporation complainant was increased, and it was at that time agreed that defendant should be released from part of his duties as superintendent, so as to devote his time and services to devising improvements in and getting up and perfecting plows. In view of the expected value of his services in this direction, complainant was induced to increase his salary. Under these circumstances, the defendant devised and constructed a plow which was very satisfactory to the trade. The time in which he was engaged in perfecting this plow was during the regular working hours in the factory. The men who did the manual labor on the new plow were all employés of and paid by the complainant, and all the materials used in its construction were bought and paid for in the same way. After the plow was completed, and had been accepted by the president as satisfactory, the defendant arranged for the building of plows after the model. During the time so spent, he was drawing his regular salary; and all his expenses, as well as the price of the models, castings and other things obtained by him, were paid by the complainant. The bill alleged that, during the time the defendant remained in the employ of the complainant, he never made any claim of property in any of the devices and improvements made or suggested by him in the new plow, and never stated or claimed that he was entitled to a patent on any of said improvements, and never, during the term of his employment, asserted any right to a patent in his own name for such improvements. After his connection with the complainant had ceased, and after complainant had been for many months, with the knowledge of the defendant, engaged in the manufacture of such plows, the defendant applied for and obtained a patent on the improvements in the plow. The bill alleges that after this patent was issued, he, for the first time, claimed that he had and has an exclusive right to manufacture such parts of the plow as are covered by the patent, and has threatened to enforce his rights under the patent as against the complainant. The bill claims that, in devising and constructing the plow, the defendant was only performing his duty as an employé of the complainant, in carrying out his contract with it; that he was doing only what he was hired and paid to do; that the result of his labors belonged to the complainant; and that he was bound, in equity and good conscience, to make an assignment of the patent to the complainant. The prayer of the bill is for a decree, directing the defendant to make an assignment of the patent, or of such interest as he may have therein, to the Hapgood Plow

Company, assignee of Hapgood & Co., or to the trustees of Hapgood & Co., in trust for the Hapgood Plow Company, and that he be enjoined and restrained from maintaining any action at law or in equity, for any infringement of the patent by Hapgood & Co., or for the use by that corporation of any of the devices or improvements covered by the patent. In its opinion, the Supreme Court say:

"The decision of the Circuit Court (11 Biss. 184, 11 Fed. 422) was placed on the ground (1) that Hewitt was not expressly required, by his contract, to exercise his inventive faculties for the benefit of his employer, and there was nothing in the bill from which it could be fairly inferred that he was required or expected to do so; (2) that, whatever right the employer had to the invention by the terms of Hewitt's contract of employment, was a naked license to make and sell the patented improvement as a part of its business, which right, if it existed, was a mere personal one, and not transferable, and was extinguished with the dissolution of the corporation. We are of opinion that the views taken of the case by the Circuit Court were correct. There is nothing set forth in the bill, as to any agreement between the corporation and Hewitt, that the former was to have the title to his inventions or to any patent that he might obtain for them. The utmost that can be made out of the allegations is, that the corporation was to have a license or right to use the inventions in making plows. It is not averred that anything passed between the parties as to a patent. We are not referred to any case which sustains the view, that, on such facts as are alleged in the bill, the title to the invention or to a patent for it passed. In McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102, the facts were in some respects like those in the present case, but the decision only went to the point that the facts justified the presumption of a license to the employer to use the invention, as a defense by him to a suit for the infringement of the patent taken out by the employé. The Circuit Court cases referred to do not support the plaintiffs' suit. In Continental Windmill Co. v. Empire Windmill Co., 8 Blatchf. 295, Fed. Cas. No. 3,142, there was an agreement that the employé should receive $500 for any patentable improvement he might make. In Whiting v. Graves, 3 Ban. & A. 222, Fed. Cas. No. 17,577, it was held that an employment to invent machinery for use in a particular factory, would operate as a license to the employer to use the machinery invented, but would not confer on the employer any legal title to the invention or to a patent for it. In Wilkens v. Spafford, 3 Ban. & A. 274, Fed. Cas. No. 17,659, the contract was that the employer should have the exclusive benefit of the inventive faculties of the employé, and of such inventions as he should make during the term of service."

We have cited this case thus fully, because the facts, as stated in the bill, show a marked similarity to those of the case at bar. In both cases, it was contended that, by reason of the relation of employer and employé, and the facts bearing upon and in connection therewith, the defendants' inventions, and their patents therefor, belonged absolutely to the corporation, and that in consequence they were bound, in equity and good conscience, to make assignment of the same to the complainants.

It will be observed that in this case there was a demurrer to the bill, which of course admitted all the facts alleged and above summarized. The Circuit Court, and the Supreme Court in affirming the decree, sustained the demurrer, on the ground that no express agreement between the complainant and defendant was set out in the bill, by which the former was to have title to defendant's inventions, or to any patent he might obtain therefor. In this respect, therefore, the situation of the complainant was the same as is

that of the complainant in the case at bar. In the latter, it is established by the finding of the court below that no express contract for vesting the title of defendant's inventions in the complainant exists, and in the former, the demurrer to the bill was sustained on the ground that it contained no sufficient allegation of such an express contract. There being no express contract in either case, it would seem that on facts of substantially the same nature and kind, the same conclusion should follow. The decision in the Hapgood Case was, in effect, that the relation of employer and employé, in connection with the facts of an undertaking by the latter to give his time and effort, as general manager, to the devising of improvements in the articles manufactured under his supervision, the subsequent raising of his salary, the decreasing of his general duties of supervision, in order that he might devote himself to the devising of such improvements, that he was specially requested to devote himself to the construction of an improved plow—the subject of the controversy—that the device in question was developed during the working hours, for which defendant was paid, that he had the assistance of other employés of complainant, and that all expenses for materials and models were paid by complainant, was not such that the equitable title in such invention, and the patent therefor, was in the employer, or that the employé, under the circumstances, should be compelled, in equity and good conscience, to assign the absolute title and property in the same, to his employer.

The decisions of the Supreme and Circuit Courts in this case, commend themselves the more strongly, that neither court has ignored what we may term the reasonable rights of the employer in such cases, but merely denied to him the right to take to himself the entire property and monopoly of defendant's invention, in the absence of express contract therefor. We think reason, as well as authority of this decision, requires a similar conclusion in the case at bar. We do not think that the complainant here, in the absence of express contract to that effect, from the mere relation of employer and employé, in connection with the facts and circumstances disclosed by this record, is entitled, in equity and good conscience, to an assignment from the defendant of his whole right, title and property in the inventions in question. If entitled to anything, complainant is only entitled to a shop right or license that would enable it to use these inventions without paying a royalty therefor, a right which does not strip defendant of his entire property right in the product of his own inventive faculty. It is by distinguishing between claims for mere shop rights or license, and claims for the entire and exclusive property right in the inventions of the employé, that the cases cited are to be profitably read. This distinction has been observed in many cases, both federal and state. McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102; Dalzell v. Dueber Watch Case Mfg. Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749; Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049; Bensley v. N. W. Horsenail Co. (C. C.) 26 Fed. 250; Herman v. Herman (C. C.) 29 Fed. 92; Boston v. Allen, 91

Fed. 248, 33 C. C. A. 485; Joliet Mfg. Co. v. Dice, 105 Ill. 649; Fuller & Johnson Mfg. Co. v. Bartlett, 68 Wis. 73, 31 N. W. 747, 60 Am. Rep. 838.

The decision of the Supreme Court in the case of Dalzell v. Dueber Watch Case Co., supra, is especially applicable to the case at bar. The pertinent point in this decision is correctly stated in the following paragraph from the syllabus:

"A manufacturing corporation which has employed a skilled workman for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for invention made by him while so employed, in the absence of express agreement to that effect."

We think the case of Solomons v. United States, 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667, cited by the complainant, well illustrates the distinction which we have dwelt upon, between the claim by an employer to an entire property right in an invention of an employé and for a conveyance of a patent monopoly thereto, and the right to a user or irrevocable license resulting from the relation of employer and employé. Solomons was the assignee of one Clark, an employé of the government as Chief of the Bureau of Engraving and Printing. While acting as such chief, he was called into consultation with a subcommittee of the committee of ways and means of the House of Representatives, the Secretary of the Treasury, and Commissioner and Deputy Commissioner of Internal Revenue. As a result of these consultations, Clark was assigned the duty of devising a self-canceling revenue stamp. At these consultations, it was mutually understood that Clark was acting in his official capacity as Chief of the Bureau of Engraving and Printing. No bargain, agreement, contract or understanding was ever entered into or reached between the officers of the government and Clark, concerning the right of the government to use the invention, or concerning the remuneration, if any, which should be paid for it. Before the final adoption of the stamp by the Commissioner, Clark stated to him that the design was his own, but that he would make no charge to the government therefor, as he was on a salary by the government and had used the machinery and other property of the government in the perfection of the stamp. No express license to use the invention was ever given by Clark to the government, nor any notice prohibiting its use or intimating that he would demand a royalty. After the stamp had gone into use by the government, Clark obtained a patent for his invention, and asked for compensation from the government for the use thereof. To this demand no response was made. Afterwards, Solomons, as assignee of Clark, brought suit against the government in the Court of Claims, to recover compensation for the use of the stamp. Upon its findings of fact, as above stated, the court entered judgment in favor of the government, and from this judgment appeal was taken to the Supreme Court. Mr. Justice Brewer, delivering the opinion of the Supreme Court, said in part:

"The case presented by the foregoing facts is one not free from difficulties. The government has used the invention of Mr. Clark and has profited by such

use. It was an invention of value. The claimant and appellant is the owner of such patent, and has never consented to its use by the government. From these facts, standing alone, an obligation on the part of the government to pay naturally arises. The government has no more power to appropriate a man's property invested in a patent than it has to take his property invested in real estate; nor does the mere fact that an inventor is at the time of his invention in the employ of the government transfer to it any title to, or interest in it. An employé, performing all the duties assigned to him in his department of service, may exercise his inventive faculties in any direction he chooses, with the assurance that whatever invention he may thus conceive and perfect is his individual property. There is no difference between the government and any other employer in this respect. But this general rule is subject to these limitations. If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployés, of his employer, as to have given to such employer an irrevocable license to use such invention."

It was because Clark had "notified the government that he would make no charge if it adopted his recommendation and used his stamp; and for the express reason that he was in the government employ and had used the government machinery in perfecting his stamp," that the Supreme Court decided that he was estopped from claiming compensation or royalty from the government for the use of his patent, and from denying an irrevocable license to the government for the use of the same. Complainant's counsel specially relied upon the following language of Mr. Justice Brewer, as above quoted:

"That which he had been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer."

It must seem very clear to one reading the whole of the above extract, that the language of Mr. Justice Brewer, just quoted, must be taken in connection with what precedes and follows it. The "property" of the employer is his right to use the invention of his employé; and what the employé "has sold in advance to his employer" was the "irrevocable license to use such invention." This meaning becomes still more clear in the light of the question actually decided by the court, which was that the owner of the patent had no right to compensation for the use thereof against the government. In this view, the government was the owner, for its own purposes, of the invention.

It is significant, too, that the case of McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102, cited as in point and discussed at length

by the learned justice, was one in which suit was brought by an employé against the employer for the use of an invention made during his employment under circumstances not unlike those of the case at bar, and in which the court below was sustained in submitting to the jury to decide, whether the facts were such as would justify the presumption of a license or special privilege to the defendants to use the invention. In the Solomons Case, no question of the right of the employer to own or have a conveyance of the entire patent monopoly was raised or discussed in either the circuit or the supreme courts. The only right discussed was, as we have seen, the property right of the employer in the use of the invention in the line of its own business.

Granting the contention of complainant's counsel, however, that Mr. Justice Brewer, in the language above referred to, meant to assert that the employer acquired the entire property right in the invention and patent of the employé, it is manifest that such assertion must be confined to the case, as stated, where "one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result." This is the statement of an express contract between employer and employé. The employé, by acceptance of such employment at a stated compensation, has contracted to devise a specific thing for his employer. This may, under circumstances, be equivalent to an express agreement to assign the patent for his invention to his employer, but that this cannot be predicated of the general relation of employer and employé, is manifest from the numerous cases that have been cited, as well as from the Solomons Case itself, and in the case at bar there is a specific finding of fact by the court below, that no express contract is proven, and none is to be inferred from the facts in the case.

We now come to the case of Gill v. U. S., supra. This, also, like the Solomons Case, is one where the complainant was employed by the government, and claimed compensation or royalty from it for the use of an invention made by the employé while in the government's service. The complainant was a foreman machinist and draftsman in the Frankford arsenal. His engagement required him to perform manual labor and to exercise mechanical skill in the service of the government. There was no special contract for the exercise of his inventive genius in such service. While so employed, complainant invented certain improved machines, which were perfected and constructed at the arsenal by government employés under his supervision. The cost of preparing patterns and working drawings and constructing working machines, was borne exclusively by the government. The improvements in each case were suggested by complainant to the commanding officer, who, after due examination, authorized their construction. When so constructed, they were used by the government in the arsenal, with the claimant's knowledge and consent before he filed an application for the patent. Mr. Justice Brown, in delivering the opinion of the court, thus states the question before it:

"This case raises the question, which has been several times presented to this court, whether an employé, paid by salary or wages, who devises an im-

proved method of doing his work, using the property or labor of his employer. to put his invention into practical form, and assenting to the use of such improvements by his employer, may, by taking out a patent upon such invention, recover a royalty or other compensation for such use."

The conclusion that complainant had no right as against the government, was reached by an application of the doctrine of "estoppel in pais," the learned justice saying:

"The ultimate fact to be proved is the estoppel, arising from the consent given by the patentee to the use of his inventions by the government, without demand for compensation. The most conclusive evidence of such consent is an express agreement or license, such as appeared in the McAleer Case, 150 U. S. 424, 14 Sup. Ct. 160, 37 L. Ed. 1130; but it may also be shown by parol testimony, or by conduct on the part of the patentee proving acquiescence on his part in the use of his invention. The fact that he made use of the time and tools of his employer, put at his service for the purpose, raises either an inference that the work was done for the benefit of such employer, or an implication of bad faith on the patentee's part in claiming the fruits of labor which technically he had no right to enlist in his service. There is no doubt whatever of the proposition laid down in the Solomons Case, that the mere fact that a person is in the employ of the government does not preclude him from making improvements in the machines with which he is connected, and obtaining patents therefor, as his individual property, and that in such case the government would have no more right to seize upon and appropriate such property. than any other proprietor would have. *On the other hand, it is equally clear that, if the patentee be employed to invent or devise such improvements his patents obtained therefor belong to his employer, since in making such improvements he is merely doing what he was hired to do.* Indeed, the Solomons Case might have been decided wholly upon that ground, irrespective of the question of estoppel, since the finding was that Clark had been assigned the duty of devising a stamp, and it was understood by everybody that the scheme would proceed upon the assumption that the best stamp which he could devise would be adopted and made a part of the revised scheme. In these consultations it was understood that he was acting in his official capacity as Chief of the Bureau of Engraving and Printing, but it was not understood or intimated that the stamp he was to devise would be patented or become his personal property. In fact, he was employed and paid to do the very thing which he did, viz., to devise an improved stamp, and having been employed for that purpose, the fruits of his inventive skill belonged as much to his employer as would the fruits of his mechanical skill."

It is upon the language we have italicized in this extract from the opinion of the court, that complainant principally relies for the support of his contention in the case before us. It is admitted by counsel, that the proposition here stated is obiter dictum, as no question of the ownership of the patent was involved in the decision of the case. The estoppel applied to the complainant went no further than to prevent his denying the right of his employer (the government) to use the patented machines, which, with his consent and acquiescence, the government had at great expense constructed and erected for its own use. No suggestion is made in the opinion of the court, that the complainant had not, subject to this license to the government, the ordinary property right in his invention and patent, so that he might use it himself or permit others to use it upon such terms as he chose. Conceding the respect due to even a dictum of the Supreme Court, we think the language of Mr. Justice Brown, in this passage, is properly confined to such a case as he conceives the Solomons Case to be, where the patentee is employed

specifically to invent ·or devise the particular improvement in question. So viewed, an express contract to assign the patent may, as we have already said, well be inferred from the acceptance by the employé of the specific employment. This view is strengthened by the immediate application of the proposition to the facts of the Solomons Case, the learned justice saying that:

"Clark had been assigned the duty of devising a stamp. * * * In fact, he was employed and paid to do the very thing which he did, viz., to devise an improved stamp; and, having been employed for that purpose, the fruits of his inventive skill belonged as much to his employer as would the fruits of his mechanical skill."

That no such general proposition, as is contended for by complainant's counsel, was intended to be stated by the Supreme Court, is made still more clear by the language which immediately follows that above quoted:

"So, if the inventions of a patentee be made in the course of his employment, and he knowingly assents to the use of such inventions by his employer, he cannot claim compensation therefor, especially if his experiments have been conducted or his machines have been made at the expense of such employer."

The court then continues by quoting from the Solomons Case as "pertinent in this connection," the following:

"So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practical form his invention, and expressly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from the use of the property and the assistance of the coemployés of· his employer, as to have given to such employer an irrevocable license to use such invention."

We thus come back to the real point decided in Gill v. United States, correctly stated in the syllabus, as follows:

"An employé, paid by salary or wages, who devises an improved method of doing his work, using the property or labor of his employer to put his invention into practical form, and assenting to the use of such improvements by his employer, cannot entitle himself, by taking out a patent for such invention, to recover a royalty or other compensation for such use. A person looking on and assenting to that which he has power to prevent is precluded from afterwards maintaining an action for damages."

We see nothing in the reasoning of the opinion by Mr. Justice Brown that establishes any other proposition than that above stated, or anything in the case that contravenes the doctrine laid down in Hapgood v. Hewitt, and other well considered cases of the federal and state courts hereinbefore cited. We have been referred to no case, nor have we been able to discover one in which, apart from express contract or agreement, and upon the mere general relation of employer and employé and of the facts and circumstances attending it, the employer has been vested with the entire property right in the invention and patent monopoly of the employé, or with anything other than a shop right, or irrevocable

license, to use the patented invention. Such a right in the employer, the employé may be estopped to deny, by the fact of his employment and his conduct in relation to the use of his inventions by his employer, and to that extent and no further have the cases gone.

The decree of the court below is affirmed.

ACHESON, Circuit Judge (dissenting). Of course, the mere relationship of employer and employé, in and of itself, does not prevent the employé from making improvements in the machines or the manufactures upon which he is engaged, and obtaining patents for the same for his own benefit. But the evidence here discloses much more than the mere relation of employer and employé between the plaintiff below (the appellant) and the defendant, Hansen. The proofs demonstrate that Hansen was the plaintiff's chief engineer, and was paid by the plaintiff a salary at the rate of $6,000 a year prior to October, 1901, and afterwards at the rate of $10,000 a year, and that in the performance of his duties as chief engineer, and while so engaged, he made the improvements here in question, and applied for letters patent therefor. Now it indisputably appears by positive and uncontradicted evidence that Hansen's duties as chief engineer included the inventing of new steel cars and parts of cars, and improvements relating to the manufacture of steel cars, for the benefit of the plaintiff company. Hansen himself testified that, as chief engineer, he had "charge of the engineering and mechanical departments of the company's business"; and, being asked if he regarded it as one of his duties to "improve or assist in improving the manufactured products," answered, "That was part of the work I looked after." In response to the question, "Did the matter of devising, designing cars, or parts thereof, come within the work of the engineering department?" he answered, "Yes, sir; it did." Charles T. Schoen, a witness for Hansen, speaking from personal knowledge, testified as follows:

"XQ. 90. As chief engineer, did Mr. Hansen do anything in the way of designing or devising new parts or structures to be used in the manufacture of steel cars? A. Yes. XQ. 91. Was that part of his duties? A. Yes, sir. XQ. 92. And he did frequently devise and design new parts for cars while he was chief engineer? Is that correct? A. Yes. XQ. 93. Did he do that for the benefit of the Pressed Steel Car Company, or for competitors of that company? A. He did it for the Pressed Steel Car Company."

The proofs, I think, bring this case squarely within the just principle enunciated by the Supreme Court in three recent cases—that, where a person is employed and paid to devise improvements, his inventions and patents obtained therefor belong to his employer.

The first of these cases is Solomons v. United States, 137 U. S. 342, 346, 11 Sup. Ct. 88, 89, 34 L. Ed. 667, where the Court, speaking by Mr. Justice Brewer, said:

"But this general rule is subject to these limitations: If one is employed to devise or perfect an instrument or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has

been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers and that which they are able to accomplish, he has sold in advance to his employer."

The second case is McAleer v. United States, 150 U. S. 424, 430, 14 Sup. Ct. 160, 37 L. Ed. 1130, where the court, speaking by Chief Justice Fuller, cited as authoritative the above-quoted paragraph from the opinion in Solomons v. United States.

And the third case is Gill v. United States, 160 U. S. 426, 435, 16 Sup. Ct. 322, 326, 40 L. Ed. 480, where the court, speaking by Mr. Justice Brown, said:

"There is no doubt whatever of the proposition laid down in Solomons' Case—that the mere fact that a person is in the employ of the government does not preclude him from making improvements in the machines with which he is connected, and obtaining patents therefor, as his individual property, and that in such case the government would have no more right to seize upon and appropriate such property than any other proprietor would have. On the other hand, it is equally clear that, if the patentee be employed to invent or devise such improvements, his patents obtained therefor belong to his employer, since in making such improvements he is merely doing what he was hired to do."

Upon the proofs it is manifest that, in making the inventions which are the subject of the bill of complaint, Hansen was doing merely what he was hired and paid by the plaintiff to do. And as the court said of Gill, so may it be said of Hansen, "The fruits of his inventive labor belonged as much to his employer as would the fruits of his mechanical skill."

It is a most significant fact that Hansen assigned to the plaintiff all his previous applications for letters patent for improvements such as those here in question which he had made while acting as chief engineer of the plaintiff. He thus repeatedly recognized that his inventions relating to steel cars devised during the course of his employment with the plaintiff as its chief engineer rightfully belonged to his employer.

I would reverse the decree of the court below, and remand the cause, with directions to enter a decree in favor of the plaintiff.