Argued 27 February, decided 9 April, 1907.

**PORTLAND IRON WORKS *v.* WILLETT.**

89 Pac. 421, 90 Pac. 1000.

APPEAL—OBJECTIONS IN LOWER COURT—SPECIFIC PERFORMANCE.

1. A complaint for the specific performance of a contract of employment which, after stating the time and object of the employment, alleges that it was stipulated that the employe should be paid at a specified rate per month, and that in consideration thereof he agreed to design such machinery as might be required and to give the employer the benefit of the best of his knowledge, and that in consideration of the employment, any improvements which the employe might conceive should become the property of the employer, is sufficient when attacked for the first time on appeal as against the objection that the employment and not the salary was the consideration for the agreement as to the ownership of the im-

provements which the employe might conceive, and that such employment was not a sufficient consideration.

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT TO INVENT.

2. Where, in a contract of general employment of inventing skill, there is an express agreement that the employer is to be the owner of any invention made by the employe, the employer becomes the owner of the employe's inventions.

SPECIFIC PERFORMANCE—CONTRACT TO INVENT—DEGREE OF PROOF.

3. To warrant a decree for the specific performance of a contract stipulating that the inventions of an employe made during his employment shall become the property of the employer, the contract must be clearly proven and its terms as to subject-matter, consideration and other essentials must be specific.

MASTER AND SERVANT—EVIDENCE OF EMPLOYMENT TO INVENT.

4. On the issue of the existence of a contract of employment by letters, it appeared that the employe offered his services to the employer, who replied that he desired a man in the capacity mentioned, and inquired whether the employe was a machine draughtsman. The employe replied by submitting blue prints of drawings of machinery previously designed by him, and stated that all of the machines designed were in successful operation, and that he desired $1,800 per year to start with. The employer replied that he accepted the employe's proposal with the understanding that drawings, patterns or designs of machinery made by the employe should belong to the employer, to which the employe replied that he would regard the drawings and patterns, etc., as belonging to the employer as a part of the consideration for the salary. *Held*, sufficient to establish a contract of employment.

SAME—CONSTRUCTION OF CONTRACT TO INVENT.

5. An employer accepted the employe's offer to work for him with a proviso that the employer should be the owner of drawings, patterns and designs of machinery made by the employe during his employment. The employe replied that any improvments wh'ch he might make the employer was welcome to have, and he would assign patents therefor to the employer upon payment of the expense; but that these matters could be arranged in a personal interview. *Held*, that the employe did not reserve for future negotiation, the question of the ownership of any improvements which he might make in machinery, especially where he, without any further negotiation, went to work and suggested to the employer that a design was patentable, but that the remark about the interview related to the details of procuring and assigning the patents.

SAME—MEANING OF DESIGN.

6. An employe tendered his services to a sawmill manufacturer, and stated that he had designed machines which were in successful operation. The employer accepted the proposal of the employe with the understanding that drawings, patterns or "designs" of machinery made by the employe should be the property of the employer. *Held*, that the word "designs" was intended by both parties to cover the invention of any new machine or improvement thereof, and was not used in the sense of ornamental design.

SAME—TIME OF CONTINUANCE OF CONTRACT.

7. A contract of employment stipulating a specified monthly compensation for the time the employe shall remain, and providing that the con-

tract may be terminated by either party on notice, is for an indefinite time and cannot be construed as an employment for a year.

SAME—OWNERSHIP OF INVENTIONS BY EMPLOYE.

8. Under a contract of employment stipulating that drawings, patterns or designs of machinery made by the employe during the time of his service shall belong to the employer, all inventions worked out during the continuance of the contract, and the patents therefor, belong to the employer.

SPECIFIC PERFORMANCE—CONDITION PRECEDENT.

9. Where a contract of employment stipulated that inventions made by the employe should be the property of the employer, and the employe made inventions, and incurred expenses in making applications and procuring patents, the employer must, in order to compel the employe to surrender title to the patents, pay the expenses incurred.

COSTS ON APPEAL—BRIEFS—PRINTING.

10. On a motion to retax costs of the printing of appellant's abstract and brief, the issue to be determined is not the reasonableness of the charges, but what was actually paid by appellant.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. COMMISSIONER SLATER.

This is a suit for specific performance by the Portland Iron Works against C. W. Willett.  Plaintiff is a corporation engaged in devising, manufacturing and selling machinery, particularly for sawmills, and has its construction works or machine shops at Portland, Oregon.  Defendant was a resident of Seattle, Washington, and, having special knowledge and experience in devising, designing and constructing such machinery, on July 5, 1904, solicited employment with it in that capacity.  As the result of a series of letters between them defendant was so employed at a stated salary, it being expressly agreed that all drawings, patterns and designs of machinery, made by him while in its employ, should become and be the property of plaintiff.  Defendant entered on the performance of said work on July 19, 1904, and continued therein until February 1, 1906, receiving therefor the agreed salary of $150 per month, during which time, and while performing his duties under said employment, defendant conceived, invented and perfected certain improvements in a log or cant hook dog, being an attachment of and used on a sawmill carriage, a gang edger and power setworks of a sawmill carriage, using, to accomplish said inventions, the

time of his employer as well as its tools and materials and the time of its other employes. During the time of his employment, and without plaintiff's consent, he applied for patents on each of said improvements in his own name and at his own expense. The company, having learned of such acts, demanded that he disclose to it all the facts concerning said applications for patents, and that he assign said inventions and applications for patents thereon, claiming to own the same by the terms of the said contract of employment. He refused, and denied that the company had any rights therein, whereupon it brought this suit.

The complaint, after alleging the foregoing facts, contains the following allegation:

"That in and by said contract it was furthermore, in consideration of the employment of said defendant by plaintiff as aforesaid, expressly stipulated that any and all improvements which defendant might conceive and design relating to band-mills, carriages, feeds, rolls and edgers, while continuing in the said employ of the plaintiff, should become and be the exclusive property of the plaintiff; and that the plaintiff might at its own option and expense patent any of the improvements so conceived and designed by the defendant; and the defendant expressly agreed to make such applications for letters patent on such devices relating to sawmill machinery as plaintiff elected to have patented, and also to duly assign said inventions and letters patent to be obtained therefor to the plaintiff, for the purpose of vesting in the latter the whole right, title and interest in and to such invention and letters patent."

In addition, it was alleged, in effect, that plaintiff's object in employing defendant was to secure exclusive and valuable rights in such improvements, whereby it would obtain particular advantage over its competitors; that defendant well knew plaintiff's object and in furtherance thereof entered into its employment; that said improvements are valuable and patentable, and that defendant has secretly and in fraud of plaintiff's rights applied for letters patent thereon; that he refused to disclose to plaintiff the date or number of his applications for patent and refuses to assign over any of them to plaintiff, but declares his purpose and intention is to prosecute his applications to

patent for his own exclusive use and benefit; that plaintiff at all times has been and still is willing to bear all expenses necessarily incurred in prosecuting applications for letters patent of the United States on each of said improvements and making a transfer thereof to the plaintiff. The prayer is that defendant be required to assign to plaintiff each of said improvements and letters patent to be obtained thereon, for an injunction against the defendant, and for general relief.

The defendant answered by general denial of the complaint, and affirmatively alleged, in effect, that he agreed to work for the plaintiff for one year from about July, 1904, for $1,800, to be paid in monthly installments of $150, and that all original drawings, patterns and designs of machinery made by him while so employed should belong to plaintiff; but that any and all patentable devices and improvements invented by him should belong to him. By its reply plaintiff denied all the material allegations of new matter in the answer. After taking the testimony, findings in defendant's favor were made, and a decree entered thereon, dismissing the complaint, from which plaintiff appeals.                              REVERSED.

For appellant there was a brief and an oral argument by *Mr. Theodore Justice Geisler.*

For respondent there was a brief and an oral argument by *Mr. Robert Catlin Wright.*

Opinion by MR. COMMISSIONER SLATER.

1. The sufficiency of the complaint was not challenged by demurrer, but it is now contended for the first time that it fails to state a cause of suit, for the reason that it alleges no consideration for the alleged express agreement on the part of the defendant that all improvements made by him while in plaintiff's employ should become and be its exclusive property. In the absence of a demurrer, all intendments must be taken in favor of the sufficiency of the pleading: *Fowler* v. *Phoenix Ins. Co.* 35 Or. 559 (57 Pac. 421); *West* v. *Eley,* 39 Or. 461 (65 Pac. 798); *Walker* v. *Harold,* 44 Or. 205 (74 Pac. 705). The com-

plaint, after stating the time and object of the employment, alleges:

"It was stipulated that the defendant should be paid by the plaintiff for his said services at the rate of $150 per month for the time he was in the employ of the plaintiff; and that defendant in consideration thereof did promise and agree to design such machinery as might be required of him, and to give plaintiff the benefit of the best of his knowledge, skill and experience."

Immediately following this language, but in a separate paragraph, is the following:

"That in and by said contract it was furthermore, in consideration of the employment of said defendant by plaintiff as aforesaid, expressly stipulated that any and all improvements which defendant might conceive and design, * * should become and be the exclusive property of the plaintiff."

It is contended that the effect of the latter allegation is that the employment, and not the salary to be paid, is the alleged sole consideration for the succeeding alleged agreement as to the ownership of the improvements, and that it is not a sufficient consideration. But, however it may be as to the latter contention, it cannot be fairly concluded from the language quoted that the pleader intended to allege the latter as a separate and distinct agreement from the former, for his language clearly imports that the stipulation as to the ownership of improvements is a part of the contract of employment, and it must necessarily follow that the salary therein agreed to be paid is alleged as the consideration for the agreement as to the ownership of improvements made.

2. To entitle it to the relief demanded herein, plaintiff relies upon an alleged express contract that all improvements which defendant might conceive and design relating to bandmills, carriages, feeds, rolls and edgers, while in its employ, should become and be its exclusive property, and that it might at its option and expense patent the same, and that the defendant expressly agreed to make such applications for patents on any of such improvements as plaintiff might elect to have patented and assign the same over to plaintiff. It seems to be conceded by all

the decisions, and we think by the defendant herein, that when there is a special service of inventing under a special employment to invent for a consideration, the employer becomes the owner of the servant's invention; and the same result follows where, in a contract of general employment of inventive skill, there is an express agreement that the employer is to be the owner of any invention or improvement: *Annin* v. *Wren,* 44 Hun, 352; *Solomons* v. *United States,* 137 U. S. 342 (11 Sup. Ct. 88: 34 L. Ed. 667); *Pressed Steel Car Co.* v. *Hansen,* 137 Fed. 403 (71 C. C. A. 207: 2 L. R. A., N. S., 1172).

3. But to warrant a decree for specific performance, such contract must be clearly and unequivocally proven, and its terms as to subject-matter, consideration and all other essentials, must be specific and unambiguous: *Pressed Steel Car Co.* v. *Hansen,* 137 Fed. 403 (2 L. R. A., N. S., 1172: 71 C. C. A. 207). Plaintiff claims that the alleged contract is included in the correspondence which passed between it and the defendant immediately prior to his arrival in Portland and his entry into its service, and particularly in its letter of July 11, 1904, and defendant's answer of July 12, 1904; while defendant insists (1) that said letters amount to nothing more than negotiations for a contract, and do not in fact constitute the contract; (2) that by his letter of July 12, he expressly reserved for future negotiation the question of the ownership of such improvements; (3) that by the terms of plaintiff's letter of July 11, it was to be the owner only "of drawings, patterns and designs of machinery," made by defendant while in its employ, and not of the invention and letters patent that might be procured thereon, attributing to the word "design," the technical meaning as used in the patent laws of the United States; and (4) that whatever contract was made therein was to continue for the term of one year only from and after July 19, 1904, and that the said improvements were not completed until after the expiration of said term. We shall consider these respective issues in their order.

4. Parties may and often do enter into a contract by communicating through the post office, and as soon as a definite offer

is thus made and accepted there is a binding contract. Whether or not the correspondence shows an agreement is always a question of construction (9 Cyc. 293), and in case the correspondence consists of a series of letters resulting in a definite offer on the one side, and an acceptance on the other, they must all be construed together to ascertain the intention of the parties. The correspondence between these parties was initiated by defendant, and consists of a series of six letters in all, the most important of which are the fourth, plaintiff's letter of July 11, 1904, and the fifth, defendant's answer of July 12, 1904. Defendant opens the correspondence on July 5, by saying:

"I would be pleased to hear from you in regard to matter of building a bandmill and other sawmill specialties, and would be glad to have you make me an offer as to what salary you would be willing to give me to go to work for you and design a bandmill and such other machinery as you may deem advisable, draw mill plans and sell machinery on the road as circumstances might require. I believe I can satisfy you."

On July 8, plaintiff answers:

"We want a man in the capacity you mention, but you are comparatively a stranger to us, and we do not know whether you would fill the bill or not. What salary do you want to work for us a few months, or long enough for us to determine the value of your services, and agree or disagree on the subject? Are you a machine draughtsman, or do you make mill plans only, and we suppose in either event you have drawings you have made in the past which we should like to inspect previous to entering into any agreement? Let us hear from you and oblige."

July 10, defendant replied, submitting blue prints of drawings of sawmill machinery previously designed by him, concerning which he says:

"I may add that all of the machines I have designed are now in successful operation," and also saying: "I think I should have $1,800 per year to start with, and I am satisfied that we could agree upon a future salary after we become better acquainted, and you have an opportunity to see the results of my work."

On July 11, plaintiff writes as follows:

"Replying to your favor of the 10th, we have decided to accept your proposal, with the understanding that should we find it necessary to discontinue the arrangement, your services are to be paid for on a basis of $150 per month for the time you are in our employ. Another matter which has not been mentioned up to the present time, and should be fully understood in advance, is the matter of ownership of any drawings, patterns or designs of machinery made by you while in our employ, and it must be understood in advance that such are our property. We should like to have you come as soon as possible, as there are a number of deals coming up at the present time which it would be well for you to come in touch with."

To this defendant replies, July 12:

"Yours of the 11th received. I will say in regard to drawings, patterns, etc., of machinery which I may make while in your service, same will certainly be considered as belonging to you as a part of the consideration of my salary. I always like to retain a blue print of my drawings, but never dispose of same or turn them over to any other parties for gain or otherwise. In the event of my inventing a machine on original lines which is a success, both practically and financially, the usual practice is to assign an undivided half interest to the employer and the inventor to retain the other half, provided a patent is taken out. I have designed a great many machines and improvements, but have never applied for any patents as yet, and do not know that I ever will. I do not know of any machine which I would want to patent unless it might be a 'Pacific Coast Log Turner,' and this is in the air as yet. Any improvement which I may make in bandmills, carriages, feeds, rolls, edgers, etc., while in your employ, you are welcome to, and if you wish a patent on them, you pay for same, and I will assign it to you. These matters we can arrange in a personal interview.

Regarding time of continuation of our contract, would suggest that a proviso be made that either party thereto has the privilege of terminating same upon 30 days' notice. I will endeavor to come to Portland next Saturday or Sunday, and be ready to go to work Monday morning."

This correspondence certainly shows a definite offer on the one side to render certain services for a specified price, and an explicit acceptance on the other. It is conceded by defendant

that he went to work for plaintiff at its shop in Portland on July 19, 1904, and he does not testify that there was any other contract than that shown by these letters; in fact, he does testify that there were no further negotiations between them prior to his beginning work. Hence the controversy in this respect relates to the ascertainment of the scope of the contract, rather than to the existence of a contract.

5. Impliedly surrendering his first contention, however, and thereby admitting that these letters contain the contract, counsel for defendant urges that defendant expressly reserved for future negotiation the question of the ownership of any improvements which he might make in bandmills, carriages, feeds, rolls, edgers, etc., when he said in his letter of July 12, that "these matters we can arrange in a personal interview." We do not think this language, when taken in connection with the contract, is susceptible of such a forced construction. Plaintiff, by its letter of the 11th, accepted defendant's previous offer, but with a proviso to the effect that it should be the owner of any drawings, patterns and designs of machinery made by defendant while in its employ. . This proviso amounts to a counter offer and called for an acceptance or rejection by defendant. He expressly accepted in terms the said counter offer and proceeds to explain in detail what he understands is meant thereby. He expressly assents that "any improvements which I may make in bandmills, carriages, feeds, rolls, edgers, etc., while in your employ, you are welcome to." There could be, therefore, nothing respecting that matter left to be arranged thereafter in a personal interview. A party to a contract cannot in the same breath agree to a thing, and also withhold it for future negotiations. But, in the same connection, defendant says to plaintiff, "If you wish a patent on them, you pay for the same, and I will assign it to you," and immediately follows the expression relied upon. It is more reasonable to say that defendant thereby referred to the manner and means of procuring patents and plaintiff evidently so understood it.

"When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail,

against either party, in which he supposed the other understood it; and when different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made": B. & C. Comp. § 712; *Pendleton* v. *Saunders*, 19 Or. 9 (24 Pac. 506).

This conclusion is also sustained by the subsequent acts of the parties. Defendant, according to his own testimony, went to work without further negotiations on these matters, and in the early part of the year 1905, he suggested to Mr. Clark, plaintiff's president and superintendent, that the lower guide to a band-mill which he had designed was patentable. While, on the other hand, Clark testified that when defendant came to work, he and defendant in a conversation between them referred to the matter of drawing up a future agreement, but it was decided by them that what had been outlined in their letters covered all the contract which was necessary, and for that reason no formal contract was drawn up.

6, Defendant also urges in his answer and in his testimony that all he agreed to in said letters was that plaintiff should be the owner of all drawings, patterns and designs made by him, and, in his brief, his counsel urges that the word "design" was never intended by either party in the correspondence to cover the invention of a "new and useful art, machine, * * or any new and useful improvement thereof"—quoting from Section 4886, Rev. Stat. U. S. (5 Fed. Stat. Ann. 421: U. S. Comp. St. 1901, p. 3382), relating to patents—but that the word "design" as used in the United States patent laws refers to "ornamental design" for an article of manufacture.

"The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a technical, local or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement shall be construed accordingly": B. & C. Comp. § 709.

No evidence was offered by defendant, tending to show that the word "design" was used by plaintiff and himself when writing said letters in the technical sense now attributed to the

word by him, nor that he so understood it, but there is ample evidence in defendant's letters of July 10 and 12, that he then understood and interpreted the word "design" as equivalent to "devise" or "invent." In the former letter he says: "I may add that all of the machines I have designed are now in successful operation," evidently using the word with reference to the utility of the machines and not to their ornamentation. It was in answer to this letter that plaintiff said:

"Another matter which has not been mentioned up to the present time, and should be fully understood in advance, is the matter of ownership of any drawings, patterns or designs of machinery made by you while in our employ, and it must be understood that such are our property."

Now, how did defendant understand and interpret this counter proposition from plaintiff? Why, by drawing a distinction between inventing a machine on "original lines," in which event, the practice was, he says, to assign an undivided one-half interest to the employer and the inventor retain the other half, and inventing "improvements" in bandmills, carriages, feeds, rolls, edgers, etc., which latter were to belong to plaintiff. Moreover, defendant does not claim that he was employed to make ornamental designs of machinery or that he did that kind of work, but he did understand that he was employed to devise and invent useful improvements, and he in fact did that kind of work. In that sense the parties used the word "design" in their letters, and they must be construed accordingly.

7. The last contention of defendant to be noticed is that the contract of employment was to last but one year, and terminated in July, 1905, before any of the improved machines were completed, and that after that time he worked under a new contract; but this contention has less to commend it than those already noticed. The employment was expressly for an indefinite period, terminable by either party on thirty days' notice. So long as defendant continued to work without giving such notice, and accepted the agreed pay of $150 per month, he was bound by all the terms of the original contract. No such notice was given prior to the middle of January, 1906, just before

defendant quit plaintiff's service.   There is some evidence on the part of defendant tending to show that an effort was made by him some time after July, 1905, to procure a new and different contract with plaintiff, but the negotiations to that end never culminated in a contract.

8. It is admitted by the defendant that the alleged improvements and inventions were made and completed, and the said applications for patents were made by the defendant, before he quit the service of plaintiff.   His application for patent on the "cant hook dog" is dated August 14, 1905, having serial number 274,156; on the "gang edger," January 4, 1906, serial number 64,222; and on the "power set works," February 30, 1905.   The drawings and specifications of each of said inventions attached to the complaint are admitted to be true and correct descriptions thereof, and it is also admitted that they are patentable. The record further shows that defendant has been to some expense in making said applications, but the amount thereof is not disclosed.   Having determined that by the express contract of the parties such inventions were to be the property of plaintiff, and the contract being explicit and free from ambiguity, and based on a sufficient consideration, and the subject-matter of the suit being definitely ascertained and described, defendant is in equity bound to assign the same over to plaintiff.

9. The decree of the lower court should therefore be reversed, and a decree entered requiring the defendant to assign and transfer to plaintiff the said three inventions upon the payment by plaintiff to defendant of the latter's expenses incurred in making said applications and procuring patents, to be hereafter ascertained by the lower court, with a perpetual injunction against assignment thereof by defendant to any other person.

REVERSED.

Decided 2 July, 1907.

## ON MOTION TO RETAX COSTS.

Opinion by MR. COMMISSIONER SLATER.

10. Appellant filed its cost bill, claiming, in addition to the other items not involved here, the following: For printing of abstract, $32.15; brief, $40.20; reply brief, $12.50—making for these items $84.85. Thereupon respondent objected to each of these items, on the ground that each charge exceeded the actual cost thereof, and that the abstract contains only 24 pages, the first brief 35 pages, and reply brief 9 pages; and he objected to the taxing of an amount for any of said items greater than the actual cost. In support of its cost bill, appellant presented and filed the affidavit of its attorney, from which it appears that the amounts of the items claimed, but objected to, were incurred and paid by appellant. To this affidavit is attached receipted bills for the items and amounts charged. However, in the receipted bill for the printing of the abstract, it is itemized as containing 36 pages, whereas it contains but 26 pages, including 2 pages for the cover, which is customary. In passing upon the matter, the clerk estimated from the amount, viz., $32.15, charged for the number of pages stated in the bill, viz., 36, for the abstract, that the rate of charge was 85 cents per page, and, as the rate charged for the remaining items was in excess of that rate he accordingly reduced the amounts charged, and allowed the following: For abstract, 26 pages, including cover, $22.10; first brief, 37 pages, including cover, $31.45, and the second brief, 11 pages, including cover, $9.35—from which this appeal is taken.

It is apparent from an inspection of the receipted bills attached to appellant's proof that the entry of 36 instead of 26 pages for the abstract, was a clerical error, and the clerk was misled in making that the basis of his computation. The issue to be determined is not the reasonableness of the charges, but what was actually paid. Appellant offered proof to support the cost bill, to the effect that the amounts charged were paid, and

there is nothing offered here to controvert that fact. It appears, also, that the abstracts and briefs are printed in small pica, so that, under rule 23 of this court (35 Or. 603, 37 Pac. ix), appellant is entitled to the actual cost of printing its abstract and briefs not to exceed $1.25 a page. It follows that the items to which objection has been made should be allowed in the following amounts: For abstract, 26 pages, including cover, $32.15; for brief, 37 pages, including cover, $40.20; for reply brief, 11 pages, including cover, $12.50—total $84.85.

REVERSED: OBJECTION TO COSTS DISALLOWED.

Decided 12 January, rehearing denied 9 April, 1907.